Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel: 818.296.9508

Attorneys for *Plaintiff*
Carrot Group, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARROT GROUP, INC., a California Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>THE COMMON POOL LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No. 2:22-CV-8348<br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT AND RELATED CLAIMS; DEMAND FOR JURY TRIAL** |

Plaintiff Carrot Group, Inc. ("Plaintiff" or "CGI") states the following for its Complaint against The Common Pool LLC ("Common Pool") and certain as yet unknown "Doe" co-defendants.

## INTRODUCTION

1. CGI is a global leader in developing critically acclaimed youth-oriented innovation challenges for Fortune 500 companies, non-profits, trade organizations, school districts, charter schools, universities, private academies, and youth associations. CGI's products and services featuring its CARROT trademarks have been used by more than two million users across multiple states, four countries, and three languages.

2. Since 2016, CGI has continuously offered custom and turnkey engagement programs featuring its CARROT trademarks, thereby imbuing CGI with common law rights in and to the CARROT marks.

3. CGI owns three federal registrations of marks containing CARROT, including two registrations covering services in Class 35 (hereinafter collectively, "the CARROT Marks"). Attached hereto as **Exhibit 1** are true and correct copies of from the official website for the United States Patent and Trademark Office ("USPTO") showing CGI's trademark registrations for the CARROT Marks, Registration Nos. 6651828, 6666485, and 6666673 (collectively, the "Registrations").

4. CGI has extensively advertised and marketed its CARROT products and services via its website and social media accounts available through Facebook, Twitter, LinkedIn, and YouTube, among other channels. As such, the CARROT brand has become synonymous with CGI in the rapidly growing innovation challenge (also known as innovation competition) space.

5. From approximately 2010 through 2019 Common Pool offered its own customized suite of innovation challenges and programs exclusively under its "Common Pool" brand name and mark.

6. However, in or about December 2020, Common Pool announced that it had changed its name to "Carrot". According to Common Pool's statements on its own

witkow | baskin

website, Common Pool decided that it needed a new "identity" to "help improve [its] online presence and therefore support sales." It chose Carrot as its new brand name for all of its innovation challenge related business offerings because "[i]t's short, memorable, and easy to pronounce", a "[u]niversal symbol for an incentive", and "[s]ounds like an established brand."

7.      Of course, Carrot "sounds like an established brand" because it already was and is an established brand in the innovation competition industry—one that is owned by and synonymous with CGI!

8.      Because of its well-established common law rights to the CARROT Marks based upon their exclusive and continuous use in the innovation challenge space since 2016, CGI did not initially believe that federal registration of its marks was necessary. However, in early 2021, after learning that Common Pool had rebranded itself "Carrot" and was now using this identical mark in connection with its innovation challenge goods and services, CGI submitted its first application for registration of the CARROT Marks with the USPTO.

9.      Also beginning in early 2021, CGI repeatedly requested that Common Pool cease and desist its use of the CARROT word mark and instead select a different moniker not already in use in the innovation challenge space. Indeed, given the relative nascency of the field, the alternative options available to Common Pool were and are endless.

10.     On April 9, 2021, despite acknowledging in correspondence with CGI that it was aware of CGI's company and branding before it also rebranded itself as "Carrot", Common Pool nevertheless submitted its own trademark application with the USPTO for the use of the term CARROT in connection with its offerings of goods and services in Classes 35 and 42, Serial No. 90/635,022 in Classes 35 and 42 (the "Application"). Attached hereto as **<u>Exhibit 2</u>** is a true and correct copy of a printout from the TESS and TSDR pages of the official website for the USPTO showing the Application and its status. (Hereinafter, Common Pool's applied-for CARROT mark shall be referred to as

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

the "Infringing Mark".)

11.    While awaiting receipt of confirmation of the CARROT Marks from the USPTO, CGI remained optimistic that Common Pool would see the writing on the wall and recognize CGI's clear priority over the CARROT word mark without the need for adversarial proceedings. Moreover, CGI did not yet have standing to commence a trademark infringement action in federal court until the CARROT Marks became officially registered.

12.    CGI's Registrations became effective on February 22, 2022 and March 8, 2022.

13.    Shortly thereafter, on May 17, 2022, Common Pool's Application—which had already been subject to extensive scrutiny from the USPTO questioning the validity of the submission—was published for opposition in the *Official Gazette*.

14.    On June 10, 2022, CGI filed a Notice of Opposition to the Application, commencing Opposition Proceeding No. 91276709 (the "Opposition Proceeding") before the Trademark Trial and Appeals Board ("TTAB").

15.    Again, CGI hoped and expected that, in light of the Opposition Proceeding and the clear priority of CGI's CARROT Marks, Common Pool would accept reality and cease its use of the Infringing Mark.

16.    Regrettably and remarkably, instead of backing down, Common Pool doubled down. Common Pool responded to the Opposition Proceeding by filing a series of separate proceedings with the USPTO seeking cancellation of CGI's CARROT Marks—Proceeding Nos. 92080164, 92080165, and 92080771 (the "Cancellation Proceedings"). (Hereinafter, the Cancellation and Opposition Proceedings shall be referred to collectively as the "TTAB Proceedings".)

17.    Enough is enough. Common Pool should not be afforded the luxury of infringing the CARROT Marks without facing any financial consequences due to the limited jurisdiction of the TTAB forum. The TTAB forum is also inadequate because it does not afford CGI the opportunity to seek and obtain preliminary injunctive relief.

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

18.     CGI thus brings this action at law and in equity for trademark infringement, unfair competition, and unfair business practices arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"); unfair competition laws of California; and the common law. Among other relief, CGI asks this Court to: (a) preliminarily and permanently enjoin Common Pool from using the CARROT Marks, the Infringing Mark, or any mark using the term "Carrot" in connection with its offerings of goods and services related to innovation challenges, competitions, or the like; (b) order that Common Pool's Application to register the Infringing Mark be denied; (c) award CGI monetary damages and to treble that award; (d) require Common Pool to disgorge all profits deriving from its use of the Infringing Mark; and (e) award CGI punitive damages, attorneys' fees, and costs.

## PARTIES

19.     CGI is a California Corporation with a principal place of business located at 2110 Artesia Blvd, Suite 523, Redondo Beach, California 90278.

20.     Common Pool is a California limited liability company with a principal place of business located at 806 Georgina Avenue, Santa Monica, California 90402.

21.     CGI is ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged of the defendants sued herein as Does 1 through 10, inclusive, but on information and belief alleges that said defendants are legally responsible for it. CGI will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

22.     CGI is informed and believes, and on that basis alleges, that except as otherwise alleged herein, each defendant is and at all times relevant to this Complaint was, the employee, agent, employer, partner, joint venturer, alter ego, affiliate, and/or co-conspirator of the other defendants and, in doing the acts alleged herein, was acting within the course and scope of such position at the direction of, and/or with the permission, knowledge, consent, and/or ratification of the other defendants. In the alternative, CGI is informed and believes, and based thereon alleges, that each

1  defendant, through its acts and omissions, is responsible for the wrongdoing alleged
2  herein and for the damages suffered by CGI.

3  ### JURISDICTION AND VENUE

4      23.    This Court has subject matter jurisdiction under section 39 of the Lanham
5  Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter
6  jurisdiction over CGI's related state and common law claims is proper pursuant to 28
7  U.S.C. §§ 1338 and 1367.

8      24.    This Court has personal jurisdiction over Common Pool because, on
9  information and belief: (a) Common Pool has marketed, distributed, and offered for
10 sale its products and services using the Infringing Mark within and to persons in the
11 State of California; and (b) Common Pool's principal place of business is located in
12 the State of California and Common Pool regularly transacts and conducts business
13 within the State of California.

14     25.    The Central District of California is a proper venue pursuant to 28 U.S.C.
15 § 1391(b)(1) & (2) because Common Pool resides in this judicial district and because a
16 substantial part of the acts or omissions giving rise to CGI's claims occurred in this
17 district.

18 ### FACTUAL ALLEGATIONS

19     26.    CGI has used the CARROT Marks continuously in commerce since at least
20 as early as April 7, 2016 in connection with business consulting and advisory services
21 in the area of global, sustainable, and innovative solutions relating to the development
22 and creation of technological innovations and inventions involving space exploration,
23 transportation, education, social issues, energy, environment, global entrepreneurship,
24 and life sciences in Class 35, and providing educational services in the nature of
25 conducting competitions and workshops and awarding prizes relating to the
26 development and creation of technological innovations and inventions involving space
27 exploration, transportation, education, social issues, energy, and the environment,
28 global entrepreneurship, and life sciences in Class 41, and a variety of other related

services. Attached hereto collectively as **<u>Exhibit 3</u>** are true and correct copies of printouts from CGI's website at the domain name www.gocarrotgo.com providing further information about CGI and press and publicity concerning some of its past and present innovation competitions.

27.     Prior to founding CGI, and establishing the CARROT brand featuring the CARROT Marks, CGI's President, Alan Zack, developed critically acclaimed initiatives through leading youth engagement and foundation marketing at X PRIZE Foundation ("XPRIZE"), the global leader in crowdsourcing innovation through incentivized competitions.

28.     Like Mr. Zack, Common Pool's founder, Jaison Morgan, is also an XPRIZE alumnus. In or about March 2010, shortly after leaving XPRIZE, Mr. Morgan formed Common Pool.

29.     From approximately 2010 through 2019 Common Pool offered its own customized suite of innovation challenges and programs exclusively under its "Common Pool" brand name and mark.

30.     However, in or about December 2020, Common Pool announced that it had changed its name to "Carrot" and began advertising and offering its services through its new website at the URL www.carrot.net. On the "history" tab of its website, Common Pool explains its decision to rebrand thusly:



## Why "Carrot"

1.  It's short, memorable, and easy to pronounce.

2.  Universal symbol for an incentive.

3.  Sounds like an established brand.

4.  It's versatile across the many client sectors where we operate.

**COMPLAINT FOR TRADEMARK INFRINGMENT**

**THE REASON FOR A NEW BRAND**
When we began this exercise in 2019, we set out to accomplish a few discrete goals. First, we need an identity that can help improve our online presence and therefore support sales. Choosing a name that is easy to remember with an available URL was hard. As we activate the new brand, we can now explore other avenues for publishing content, such as educational seminars to support a broader understanding of our services, expanding our business into new markets (such as working with impact investors to use our platform to source dealflow), and strengthening our revenue line by more effectively promoting our services to a broader range of the same client base. All of these goals are made easier when we have a clear and more marketable identity.

31. Common Pool was well aware that CGI was already using the CARROT Marks in connection with its innovation challenge products and services when it rebranded itself as Carrot and began using the Infringing Mark.

32. Specifically, in or about early July 2020, Mr. Morgan emailed "Ms. S", a mutual friend of both Mr. Morgan and Mr. Zack with extensive contacts in the technology startup world. Mr. Morgan informed Ms. S that Common Pool would be "rebranding the company in the 4th quarter of this year (new name, logo, social media strategy, etc.)." Morgan also advised Ms. S that Common Pool's first project under the new brand would be "running a business planning competition for an HBCU [Historically Black College or University]". In addition to wishing Mr. Morgan well, Ms. S responded: "BTW- I caught up with my friend, Alan Zack, who joined XPrize the month after you left. He created a challenge company as well, focused more on the

educational        sector.        Here's        his        website        in        case        you're        interested. https://www.gocarrotgo.com/."

33.     Nevertheless, a few months later, in or about December 2020, Common Pool publicly announced it had changed its name to Carrot and re-established the company's website at https://www.carrot.net/.

34.     Almost immediately, Mr. Zack began receiving correspondence from confused current and former clients and partners of CGI. To wit, on or about January 4, 2021, Mr. Zack was contacted by the COO of one of CGI's main corporate partners who asked, "Are you working with Common Pool now?". The confused COO referred Mr. Zack to Common Pool's new website and explained that Common Pool was also calling itself Carrot.

35.     Similarly, on or about January 14, 2021, Mr. Zack received a phone call from the Director of Community Partnerships for one of CGI's largest school district clients, congratulating him on CGI's launch of a new $90 million prize around racial equity. Of course, the referenced competition was the work of Common Pool, not CGI. But because the client had seen press reports attributing that competition to "Carrot", and because racial equity was one of the social issues also addressed through CGI's innovation challenges, the client naturally assumed it was affiliated with CGI.

36.     After receiving these communications, reviewing Common Pool's new website detailing its rebranding as "Carrot", and discussing the matter internally and externally with social impact industry influencers, Mr. Zack reached out directly to Mr. Morgan via to request that Common Pool cease using the Infringing Mark. Specifically, on March 30, 2021, Mr. Zack emailed Mr. Morgan in firm and fair fashion to advise: "My company, Carrot, has been using the Carrot trademark since April 2016 when we established it as an S Corp in the state of California. We have a pending trademark registration with the USPTO. Obviously, your rebranding has and will continue to create identity problems for both of us. As such, we would like to you seek out a new brand for your company. [¶] We are amenable to a reasonable phase-out period of your

use of Carrot. Please let me how you would like to proceed."

37.    Mr. Morgan responded that same day, acknowledging that he and Common Pool were already aware of CGI's company and website/branding, but nevertheless asserting that Common Pool's use of the identical Infringing Mark was "not creating any confusion between the companies and their branding."

38.    As evidenced below, however, even the text of Mr. Morgan's email—in particular his "carrot.net" email address and Carrot-centric signature block announcing that "Common Pool is now Carrot" and explaining Carrot's business model of "us[ing] the power of competition . . . to create incentives that put many minds to work to solve tough problems"—plainly belies his assertions that Common Pool's new branding featuring the Infringing Mark was unlikely to create confusion with CGI's Carrot-based business.

**From:** Jaison Morgan <morgan@carrot.net>
**Sent:** Tuesday, March 30, 2021 10:49 AM
**To:** Alan Zack <alan@gocarrotgo.com>
**Subject:** Re: Your Use of the Carrot Trademark

Alan:

It's great to meet you. We are aware of your company and your website/branding. After extensive research, we maintain that the purposes of our two companies are distinctly different and that we are not creating any confusion between the companies and their branding. Let me know if you want to schedule a call. I would be happy to clarify our position further.

Again, it's great to meet you.

Jai

⊛ C A R R O T

**Jaison Morgan**, CEO
310-266-6226 / morgan@carrot.net / carrot.net
Santa Monica, California (USA)

*Most organizations don't use the power of competition. At Carrot we create incentives that put many minds to work solving tough problems. When you run a competition, you'll receive multiple solutions tailored to your needs, saving you time and resources.*

⸺

**Our name has changed, but our values haven't.**
Common Pool is now Carrot → Read about our transition

39.    Not surprisingly, Mr. Zack's reply to Mr. Morgan was incredulous: "No confusion? Our client called us last week to congratulate us on our Democracy competition."

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

40.     After this initial exchange, Mr. Zack and Mr. Morgan spoke at length over the phone and engaged in additional email correspondence in which Mr. Zack exhaustively and with increasing exasperation sought to persuade Mr. Morgan to cease using the Infringing Mark.

41.     But Mr. Morgan only retrenched. In fact, initially unbeknownst to Mr. Zack, on April 9, 2021, shortly after his initial contact with Mr. Morgan, Common Pool raced to file the Application with the USPTO, seeking to register the Infringing Mark, ostensibly believing that such registration would somehow immunize it from CGI's claims. This despite the fact that Common Pool's asserted date of first use of the Infringing Mark was December 17, 2020, ***more than four years after*** CGI's first use of the CARROT Marks in or about April 2016!

42.     CGI and Common Pool are direct competitors in the innovation competition industry. CGI has a global footprint and has provided the same services (incentive-based innovation challenges) in the same channels (government, non-profits, and corporate) as Common Pool's rebranded "Carrot" since 2016. CGI, like Common Pool (now "Carrot"), is hired by various clients to provide complete end-to-end services for the purposes of running innovation challenges. These services include, without limitation: creation of a dedicated website, setting rules and parameters, legal review and compliance, participant outreach, advertisement, tech support, judging, and prizing.

43.     Moreover, CGI continues to expand into new markets which naturally and inevitably will cause its business to overlap with Common Pool's Carrot business and create confusion between the two companies. CGI's senior and superior rights to the CARROT Marks include this "natural zone of expansion."

44.     As noted hereinabove, Common Pool's Carrot rebrand in December 2016 has already generated actual confusion among CGI's clients and partners. Continued and increasing confusion is exceedingly likely as evidenced most clearly by performing "Google" searches of the terms "Innovation Challenge Carrot", "Innovation Competition Carrot", and the like. Such a search yields results for both companies, but

feature Common Pool's Carrot business and website more prominently than CGI's. Even the more basic searches of "Carrot Innovation", "Carrot Challenge", and "Carrot Competition" yield results featuring and linking to Common Pool's carrot.net website and programs at or near the top. A web user viewing these results—and even after clicking into the links to Common Pool's carrot.net website—would necessarily be confused between the two businesses and/or misled to believe the businesses are one and the same. Among other things, and without limitation, CGI's current and prospective clients and partners, and the participants in CGI's competitions and challenges, will necessarily experience confusion when they get directed to Common Pool's Carrot website only to find that the expected branding and prizes are different and/or absent.



**COMPLAINT FOR TRADEMARK INFRINGMENT**

45.   CGI is thus informed and believes that in order to promote its business, Common Pool engages in a number of activities that infringe CGI's CARROT Marks, which activities constitute false advertising and unfair competition. For example, and in light of the Internet search results referenced hereinabove, CGI is informed and believes that Common Pool purchases and uses, without authorization, CGI's CARROT Marks, or confusingly similar variations thereof including the Infringing Mark, as a "keyword" in Internet keyword advertising programs, such as Google's AdWords program and Yahoo!'s Marketing Solutions program.

46.   The likelihood of confusion, mistake, and deception engendered by Common Pool's use of the Infringing Mark is causing, and is likely to continue causing, irreparable harm to the goodwill symbolized by the marks and the reputation for quality, competence, and social impact that they embody. Among other things, and without limitation, Common Pool's use of the Infringing Mark, in particular its adoption of the "Carrot" company/brand name is causing, and is likely to continue causing, CGI's current and prospective clients, partners, and innovation challenge participants to mistakenly attribute Common Pool's products and services to CGI (and vice versa), thereby blurring and eroding the distinctiveness of the CARROT Marks and/or tarnishing the reputation of the CARROT Marks in the process.

47.   CGI has never consented to, sponsored, endorsed, or approved of Common Pool's use of the Infringing Mark or any variation thereof in connection with sale, marketing, or provision of any of its products or services. Since Common Pool's rebranding as "Carrot" in December 2020, CGI has repeatedly objected to Common Pool's use and adoption of the term in connection with its business, to no avail.

48.   CGI is informed and believes, based upon among other things, Common Pool's admitted pre-existing knowledge of CGI's brand and company before its rebrand and the shared XPRIZE background of the two companies' respective founders, that Common Pool knowingly, willfully, intentionally, and maliciously adopted and used its confusingly similar imitation of CGI's CARROT Marks, including, in particular,

Infringing Mark (albeit with different design marks).

49.      Judicial economy is well-served by resolving the parties' dispute via the instant action in lieu of the TTAB Proceedings. Not only does this civil action involve matters and seek remedies—in particular, preliminary injunctive relief, damages, and attorneys' fees—outside TTAB jurisdiction, but the TTAB Proceedings are also in their very early stages. Indeed, the parties have yet to even exchange initial disclosures or otherwise commence discovery. Moreover, given the multiplicity of the TTAB Proceedings, there is a serious danger of conflicting rulings, which militates in favor of resolution of all of the parties' claims in this single federal court action.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement)

50.      CGI repeats and incorporates by reference the allegations in the preceding paragraphs

51.      Since approximately April 2016, CGI has exclusively and continuously promoted and used the CARROT Marks in commerce, both in multiple states within the United States and in several other countries, both directly and through its website and other advertising channels.

52.      The CARROT Marks, including the CARROT word mark, are inherently distinctive in that they are arbitrary, or, at most, suggestive, of CGI's innovation competition goods and services, which are completely unrelated to food or health, which is the term's primary meaning. Moreover, the CARROT Marks, through their continued and widely recognized use in commerce, have acquired secondary meaning associated with innovation competitions.

53.      Common Pool's use of a confusingly similar imitation of CGI's CARROT Marks, in particular the Infringing Mark, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Common Pool's goods and services are provided by CGI, or are associated or connected with CGI, or have the sponsorship, endorsement, or approval of CGI.

54.     Common Pool's Infringing Mark is confusingly similar to CGI's federally registered marks, in particular the CARROT word mark, in violation of 15 U.S.C. §§ 1114 and 1125(a).

55.     Common Pool's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to CGI's goodwill and reputation as symbolized by the CARROT Marks, for which CGI has no adequate remedy at law. CGI is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

56.     Pursuant to 15 U.S.C. § 1117, CGI is entitled to recover damages in an amount to be determined at trial, profits made by Common Pool deriving from the Infringing Mark, and the costs of this action.

57.     Furthermore, CGI is informed and believes, and on that basis alleges, that the actions of Common Pool were undertaken intentionally, willfully, and/or maliciously and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling CGI to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition and False Advertising)

58.     CGI repeats and incorporates by reference the allegations in the preceding paragraphs.

59.     Since approximately April 2016, CGI has exclusively and continuously promoted and used the CARROT Marks in commerce, both in multiple states within the United States and in several other countries, both directly and through its website and other advertising channels.

60.     The CARROT Marks, including the CARROT word mark, are inherently distinctive in that they are arbitrary, or, at most, suggestive, of CGI's innovation competition goods and services, which are completely unrelated to food or health, which is the term's primary meaning. Moreover, the CARROT Marks, through their

continued and widely recognized use in commerce, have acquired secondary meaning associated with innovation competitions.

61.     Common Pool's use of a confusingly similar imitation of CGI's CARROT Marks, in particular the Infringing Mark, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Common Pool's goods and services are provided by CGI, or are affiliated, connected, or associated with CGI, or have the sponsorship, endorsement, or approval of CGI.

62.     Common Pool has made false representations, false descriptions, and false designations of, on, or in connection with its goods and services in violation of 15 U.S.C. § 1125(a). Common Pool's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to CGI's goodwill and reputation as symbolized by CGI's CARROT Marks, for which CGI has no adequate remedy at law.

63.     Common Pool knew or should have known that its statements and activities referencing and incorporating the Infringing Mark were likely to mislead.

64.     In addition to injunctive relief, CGI is entitled to recover damages in an amount to be determined at trial, profits made by Common Pool deriving from the Infringing Mark, and the costs of this action pursuant to 15 U.S.C. § 1117.

65.     Furthermore, CGI is informed and believes, and on that basis alleges, that the actions of Common Pool were undertaken intentionally, willfully, and/or maliciously and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling CGI to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
### (Federal Cybersquatting)

66.     CGI repeats and incorporates by reference the allegations in the preceding paragraphs.

67.     Upon information and belief, Common Pool has a bad faith intent to profit

from the registration and use of the Internet domain name carrot.net, which domain name creates a false and misleading association with CGI's distinctive and senior CARROT Marks.

68.   Specifically, the second-level domain name portion of the carrot.net domain name is confusingly similar to, and dilutes the distinctive quality of, CGI's famous and/or distinctive CARROT Marks, in particular CGI's CARROT word mark.

69.   As discussed more fully hereinabove, CGI has been damaged by Common Pool's unlawful use of the carrot.net domain name and will suffer irreparable harm so long as such use continues.

70.   Common Pool's acts, as aforesaid, are in violation of the Anticybersquatting Consumer Protection Act ("ACPA") under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

71.   Accordingly, pursuant to the ACPA, CGI is entitled to costs of suit, money damages in an amount to be determined—or, in the alternative, maximum statutory damages of $100,000 per act of cybersquatting—as well as an order canceling the Common Pool's registration of the carrot.net domain name or transferring it to CGI.

72.   Furthermore, CGI is informed and believes, and on that basis alleges, that the aforesaid actions of Common Pool were undertaken intentionally, willfully, and/or maliciously and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling CGI to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM FOR RELIEF

### (Denial of Federal Registration of Infringing Mark)

73.   CGI repeats and incorporates by reference the allegations in the preceding paragraphs.

74.   As described hereinabove, CGI believes it will be damaged by Common Pool's registration of the Infringing Mark with the USPTO via the Application, and thus seeks denial of the Application on the grounds that it is likely to cause confusion,

mistake or deception as to the affiliation, connection, or association of CGI with Common Pool (and vice versa), or with regard to the origin, sponsorship or approval by CGI of Common Pool's goods, services, or commercial activities.

## FIFTH CLAIM FOR RELIEF

### (Dismissal of the Cancellation Proceedings)

75.    CGI repeats and incorporates by reference the allegations in the preceding paragraphs.

76.    Judicial economy is well-served by resolving the Cancellation Proceedings filed by Common Pool rather than through their piecemeal resolution in the limited TTAB Forum and to avoid the danger of conflicting rulings.

77.    Common Pool's claims in the Cancellation Proceedings are meritless, in particular, Common Pool's assertions that its Infringing Mark has priority over CGI's CARROT Marks and that CGI has abandoned the CARROT Marks. As discussed hereinabove, these assertions are provably false.

78.    Accordingly, CGI seeks an Order from this Court adjudicating that the CARROT Marks are valid, that any defect in the Registrations or CGI's applications does not affect the validity of the Registrations and can be cured through amendment, that judgment in the Cancellation Actions be entered in CGI's favor, and that the Cancellations Actions be dismissed with prejudice.

## SIXTH CLAIM FOR RELIEF

### (Statutory Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 and 17500 *et seq.*)

79.    CGI repeats and incorporates by reference the allegations in the preceding paragraphs.

80.    Common Pool's actions described above and specifically, without limitation, its use of a confusingly similar imitation of CGI's CARROT Marks, in particular the Infringing Mark, constitute trademark infringement, false advertising, and unfair competition in violation of the laws of the State of California.

81.     By these actions, Common Pool has engaged in false advertising and unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*, and, as a result, CGI has suffered and will continue to suffer damage to its business, reputation, and goodwill.

82.     As a direct and proximate result of Common Pool's willful and intentional actions, CGI has suffered damages and is entitled to disgorgement of Common Pool's profits in an amount to be determined at trial, as well as injunctive relief. Unless Common Pool is restrained, CGI will continue to suffer irreparable damage.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

83.     CGI repeats and incorporates by reference the allegations in the preceding paragraphs.

84.     Common Pool's actions described above and specifically, without limitation, its use of a confusingly similar imitation of CGI's CARROT Marks, in particular the Infringing Mark, constitute trademark infringement, in violation of state common law, in particular the common law of the State of California.

85.     CGI is informed and believes, and on that basis alleges, that the actions of Common Pool were undertaken intentionally, willfully, and/or maliciously and with the intention of causing confusion, mistake, or deception, thereby entitling CGI to punitive damages in addition to injunctive relief, actual damages, disgorgement of Common Pool's profits deriving from the Infringing Mark, and all other relief or remedies available under common law.

## PRAYER FOR RELIEF

Wherefore, CGI demands judgment against Common Pool as follows:

A.     That CGI be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1051 *et seq.*; Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*; and the federal and/or California common law of trademark infringement; specifically, that Common Pool and all other persons acting in concert with Common Pool be enjoined

from using the CARROT Marks, or any mark confusingly similar to the CARROT Marks, including in particular, the Infringing Mark, in connection with the marketing, promotion, advertising, sale, or distribution of any innovation challenge or competition-related products or services;

B.   That CGI be granted preliminary and permanent injunctive relief under the ACPA including an order canceling Common Pool's registration of the carrot.net domain name or transferring it to CGI;

C.   That CGI be awarded, at its election, maximum statutory damages of $100,000 per act of cybersquatting committed by Common Pool pursuant to the ACPA

D.   That Common Pool's Application of the Infringing Mark with the USPTO be ordered denied and the Cancellation Actions be dismissed with prejudice;

E.   That Common Pool be ordered to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of CGI's products and services vis-à-vis Common Pool's products and services, including without limitation:

1.   the sending of a registered letter (with a copy to CGI) to all internet search engines, including but not limited to, Google and Yahoo!, requesting that Common Pool's keyword advertising and sponsored advertisements be removed from their search engines; and

2.   the placement of corrective advertising on Common Pool's website(s) informing consumers of their prior misrepresentations regarding Common Pool's association, affiliation, or the like with CGI and vice versa.

F.   That Common Pool be adjudged to have violated 15 U.S.C. § 1125(a) by infringing the CARROT Marks, in particular the CARROT word mark, and unfairly competing against CGI by using false, deceptive or misleading descriptions or representations of fact by virtue of its unauthorized use of the Infringing Mark;

G.   That Common Pool be adjudged to have unlawfully and unfairly competed against CGI under Cal. Bus. & Prof. Code § 17200, *et seq.*;

COMPLAINT FOR TRADEMARK INFRINGEMENT

H.     That Common Pool be adjudged to have competed unlawfully and unfairly against CGI by engaging in false or misleading advertising under Cal. Bus. & Prof. Code § 17500, *et seq.*;

I.     That CGI be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Common Pool's false and misleading statements and unauthorized use of the Infringing Mark;

J.     That CGI be awarded Common Pool's profits derived by reason of said acts, or as determined by said accounting;

K.     That such damages and profits be trebled and awarded to CGI and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Common Pool's willful, intentional, and deliberate acts in violation of the Lanham Act;

L.     That Common Pool's profits derived by reason of the aforesaid acts be disgorged pursuant to Cal Code §§ 17200 and 17500, *et seq.*

M.     That CGI be awarded all other damages available to it under federal law and common law, including, without limitation, punitive damages;

N.     That CGI be granted prejudgment and post judgment interest;

O.     That CGI be granted all of its costs of suit; and

P.     That CGI be granted such other and/or further relief as the Court may deem just and/or proper.


Dated:  November 15, 2022                    Respectfully submitted,

                                            witkow | baskin

                                            By: /s/Cory A. Baskin
                                                 Cory A. Baskin
                                            Attorneys for *Plaintiff* Carrot Group, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff Carrot Group, Inc. hereby demands a jury trial as to all issues so triable in the present action.

Dated:  November 15, 2022    Respectfully submitted,

witkow | baskin

By: /s/Cory A. Baskin
   Cory A. Baskin

Attorneys for *Plaintiff* Carrot Group, Inc.

**COMPLAINT FOR TRADEMARK INFRINGMENT**